

**U.S. Department of Justice**

**Tax Division**

Trial Attorney: Jeremy N. Hendon
Attorney's Direct Line: 202-353-2466
Fax No.: 202-307-0054
Jeremy.Hendon@usdoj.gov

*Please reply to:*     *Civil Trial Section, Western Region*
                *P.O. Box 683*
                *Washington, D.C. 20044*

REZ:RRW:JNHendon
DJ 5-61-9226
CMN 2019100122

January 28, 2019

Honorable Trish M. Brown
United States Bankruptcy Judge
District of Oregon
1050 SW 6th Avenue #700
Portland, OR 97204

> Re:    *In re Edward J. Duffy*
>        Case No. 18-33339- tmb13 (USBC D. Oregon)

Dear Judge Brown:

      Pursuant to the Court's order, please find attached a file-stamped copy of the Internal Revenue Service's pretrial memorandum filed in the United States Tax Court in the case *Edward J. Duffy & Shannon Duffy v. Commissioner of Internal Revenue*, Docket No. 8711-16 on November 26, 2018.

      Should you have any questions, please feel free to contact me at (202) 353-2466.

                            Sincerely yours,

                            JEREMY N. HENDON
                            Trial Attorney
                            Civil Trial Section, Western Region

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was placed within a first class postage

prepaid envelope and deposited in the United States Mail on January 28, 2019, addressed to:

Edward J. Duffy
1717 SW Highland Road
Portland OR 97221

*Debtor*

Michael D. O'Brien
Michael D. O'Brien & Associates, PC
12909 SW 68th Parkway, Suite 160
Portland OR 97223

*Attorneys for Debtor*

Wayne Godare
Chapter 13 Trustee
222 SW Columbia St #1700
Portland, OR 97201

*Chapter 13 Trustee*

US Trustee, Portland
620 SW Main St #213
Portland, OR 97205

*U.S. Trustee*

And that the following received notice via CM/ECF on January 28, 2019:

MATTHEW A ARBAUGH on behalf of Creditor Kehoe NW Properties
matt@arbaugh-law.com

JESSE A BAKER on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION, AS
INDENTURE TRUSTEE FOR BEAR STEARNS ARM TRUST 2005-9, MORTGAGE-
BACKED NOTES, SERIES 2005-9
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor Wells Fargo Home Mortgage
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

KATHLEEN LOUISE BICKERS on behalf of Creditor Department of Treasury-Internal
Revenue Service

- 3 -

kathleen.bickers@usdoj.gov, deryl.looney@usdoj.gov

JOSEPH A FIELD on behalf of Creditor John and Debra A Stover
joe@fieldjerger.com, pamela@fieldjerger.com

JOSEPH A FIELD on behalf of Creditor Matt Stover
joe@fieldjerger.com, pamela@fieldjerger.com

Wayne Godare
c0urtmai1@portland13.com, c0urtmai1@portland13ct.com

NICHOLAS J HENDERSON on behalf of Creditor Nicholas J. Henderson
nhenderson@portlaw.com, tsexton@portlaw.com;mperry@portlaw.com

MICHAEL D O'BRIEN on behalf of Debtor Edward J. Duffy
enc@pdxlegal.com, hugo@pdxlegal.com;lauren@pdxlegal.com

PATRICK L STEVENS on behalf of Creditor Mid Oregon Federal Credit Union
pstevens@eugene-law.com, lmiller@eugene-law.com,ncheever@eugenelaw.com

US Trustee, Portland
USTPRegion18.PL.ECF@usdoj.gov

LAURA J WALKER on behalf of Creditor Bank of Oswego
lwalker@cablehuston.com, fchandler@cablehuston.com


/s/ Jeremy N. Hendon
JEREMY N. HENDON
Trial Attorney
U.S. Department of Justice, Tax Division

US TAX COURT
RECEIVED

NOV 26 2018
4:36 PM

PA 

US TAX COURT
eFILED

NOV 26 2018

EDWARD J. DUFFY & SHANNON L. DUFFY,
Petitioners,

ELECTRONICALLY FILED

v.

Docket No. 8711-16

COMMISSIONER OF INTERNAL REVENUE,
Respondent

# RESPONDENT'S PRETRIAL MEMORANDUM

CERTIFICATE OF SERVICE

Trial Calendar: Portland, Oregon
Date: December 10, 2018

---

## PRETRIAL MEMORANDUM FOR RESPONDENT

**NAME OF CASE:**                              **DOCKET NO.**

Edward J. Duffy & Shannon L.                   8711-16
Duffy

                                               Filed Electronically

**ATTORNEYS:**

Petitioners:                                   Respondent:
Pro Se                                         Nhi T. Luu
<!-- redacted -->                              (503) 265-3608

**AMOUNTS IN DISPUTE:**

| Year | Deficiency | Addition to Tax/Penalty I.R.C. § 6662(a) |
|------|-----------|------------------------------------------|
| 2009 | $ 44,514.00 | $ 7,942.80 |
| 2010 | $ 40,469.00 | $ 8,093.80 |
| 2011 | $318,580.00 | $63,716.00 |
| 2012 | $ 59,022.00 | $11,804.40 |
| 2013 | $198,329.00 | $39,457.80 |
| 2014 | $  1,544.00 | $    108.80 |

**STATUS OF CASE:**

Probable Settlement___    Probable Trial___    Definite Trial_X_

The automatic stay in petitioner Edward J. Duffy's current
Chapter 13 bankruptcy proceeding was lifted on November 7, 2018.

**CURRENT ESTIMATE OF TRIAL TIME:**          3-4    hours

**MOTIONS RESPONDENT EXPECTS TO MAKE:**    None

**STATUS OF STIPULATION OF FACTS:**    Completed ___    In Process  X

**ISSUES:**

1. Whether petitioners are entitled to a claim a loss from the sale of a business asset in the amount of $971,988.00 in 2011, which was attributable to the short sale of their Gearhart beach house and generated a net operating loss in 2011 that petitioners carried back to taxable years 2009 and 2010.

If petitioners are not entitled to a reported loss of $971,988, then petitioners also would not be entitled to take suspended Schedule E rental losses in the amount of $199,875.000 claimed in 2011 and a net operating loss in 2011. Disallowance of the 2011 net operating loss also resulted in the disallowance of claimed net operating loss carrybacks to taxable years 2009 and 2010 in the amounts of $274,002.00 and $144,268.00, respectively, which in turn increased their adjusted gross income for taxable years 2009 and 2010 and resulted in the phase out of their claimed rental losses for 2009 and 2010 in the amounts of $25,000.00 and $13,972.00, respectively.

Lastly, if petitioners are not entitled to the $971,988.00 loss from the sale of the Gearhart beach property, and thus are not entitled to a net operating loss in 2011, then petitioners are liable for taxes upon the state tax refund that they received in the amount of $28,643.00 in 2012.

2. Whether petitioners are liable for taxes upon cancellation of indebtedness income in the amounts of $108,661.00 and $391,532.00 for taxable years 2011 and 2013, respectively.[1] If petitioners' cancellation of indebtedness

---

[1] The insolvency exception for 2011 does not appear to be raised in the petition. Petitioner Shannon Duffy's representative, who has not decided whether he will file an appearance in this case, was notified that respondent would not object to a motion for leave to amend the petition to raise the insolvency exception for taxable year 2011.

income was excludible because petitioners were insolvent at the
time of the discharge, then tax attributes reduction is required
under I.R.C. § 108.

3. Whether petitioners are entitled to disallowed Schedule C
car and truck expenses and travel expenses related to Impact
Medical for taxable year 2011, which was a single-member
disregarded entity in 2011, in the amounts of $1,680.00 and
$543.00, respectively.

4. Whether petitioner Edward Duffy had sufficient outside
basis in Impact Medical LLC to take the reported losses and
whether he owes taxes, including self-employment taxes, upon the
guaranteed payments received from Impact Medical LLC during
taxable years 2012, 2013, and 2014. Additionally, if
petitioners were insolvent during 2013 and their cancellation of
indebtedness income was excluded from gross income, then they
are required to take tax attributes reductions in accordance
with I.R.C. § 108, which would result in an adjustment to
petitioner Edward Duffy's outside basis in Impact Medical LLC.

5. Whether petitioner Edward Duffy is entitled to reported
unreimbursed partnership expenses in the amounts of $11,690.00,
$10,397.00, and $15,399.00 for taxable years 2012, 2013, and
2014.

6. Whether petitioners are liable for the accuracy-related
penalties for all years.

**WITNESS(ES) RESPONDENT EXPECTS TO CALL:**

Petitioners

Petitioners are expected to
testify as to the issues in
dispute, including (1) the
preparation of their tax
returns, including the
information and documents that
they provided; (2) their
Gearhart beach house, including
their use; and (3) petitioner
Edward Duffy's involvement with
Impact Medical LLC, including
contributions, distributions,
and guaranteed payments

received during 2012, 2013, and
2014.

Revenue Agent Heather Buss          Revenue Agent Heather Buss is
expected to testify about
(1) her audit of petitioners'
tax returns at issue in this
case, (2) her investigation and
review of financial records to
determine petitioners' use of
the Gearhart beach house, and
(3) the adjustments in the
notice of deficiency. She may
also authenticate documents if
they are not stipulated.

In addition, respondent may also call any witness listed or
called by the petitioners and any witness whose testimony
becomes relevant as a result of documents produced on behalf of
the petitioners after the date of this memorandum. Respondent
also may call additional witnesses for rebuttal and/or
impeachment purposes.


## SUMMARY OF FACTS:

Petitioner Edward Duffy has a work background in the sale
of medical devices.[2] On February 23, 2011, Edward Duffy formed
Impact Medical LLC, in which he was the sole shareholder.[3] Thus,
for taxable year 2011, Edward Duffy reported his medical sales
activities on a Schedule C with the name of "Impact Medical."
On his 2011 Schedule C for "Impact Medical," petitioner Edward
Duffy reported claimed car and truck expenses in the amount of
$4,380.00 using the standard mileage rate, meals and

[2] Petitioner Shannon Duffy also operated a Schedule C business as
a designer of "boxwood & blooms" for taxable years 2009 through
2012, inclusive. The adjustments in the notice of deficiency do
not relate to petitioner Shannon Duffy's Schedule C activities.

[3] Impact Medical LLC was registered with the Oregon Secretary of
State on February 23, 2011. It was administratively dissolved
on April 21, 2016. Petitioner Edward Duffy registered Impact
Medical Partners with the Oregon Secretary of State on March 7,
2016, and he registered Impact Medical Partners LLC with the
Oregon Secretary of State on January 17, 2017.

entertainment in the amount of $2,901.00, and travel expenses that included 100% of meals in the amount of $6,365.00. A mileage log was provided to the Revenue Agent during the audit that showed less business miles than were reported on the Schedule C, and petitioners did not fully substantiate the claimed travel expenses.

During taxable year 2012, Richard Edelson, a physician, became a member of Impact Medical LLC. For taxable years 2012, 2013, and 2014, petitioner Edward Duffy reported the following flow-through items from Impact Medical LLC, which was identified as a partnership, on his Schedule E as nonpassive losses:

|                                     | 2012        | 2013         | 2014        |
|-------------------------------------|-------------|--------------|-------------|
| Unreimbursed partnership expenses   | $11,690.00  | $ 10,397.00  | $15,399.00  |
| Impact Medical                      | $74,087.00  | $109,986.00  | $98,854.00  |

During taxable years 2012, 2013, and 2014, Impact Medical LLC also paid guaranteed payments to petitioner Edward Duffy in the amounts of $174,964.00, $218,182.00, and $25,082.00, respectively.

Petitioners used to own a beach property that they treated as a rental property. This beach property was listed with a rental agency, advertised, was made available to the public for renting, and was eventually sold at an unknown date prior to the years at issue.[4] During 2006, petitioners purchased a five bedroom, approximately 5,000 sq. foot beach house on 3rd Street in Gearhart, Oregon (Gearhart beach house), a beach community, for approximately $1.8 million.[5] The Gearthart beach house is seventy-nine miles from petitioners' residence in Portland, and

---

[4] The only rental property reported on petitioners' 2009, 2010, and 2011 Schedules E was the Gearhart beach house. The adjustments in the notice of deficiency do not relate to petitioners' beach house that they owned prior to the Gearhart beach house.

[5] It is respondent's understanding that petitioners and the sellers of the Gearhart beach house were involved in litigation over petitioners' land sale contract to purchase the Gearhart beach property. In 2008, petitioners refinanced the Gearthart beach house with JP Morgan Chase Bank, and $1.4 million of the funds were used to pay off the original sellers.

the anticipated travel time by car from petitioners' residence
to the Gearhart property is approximately ninety minutes.
Presumptively due to the economic downturn and petitioner Edward
Duffy's separation from Synthes, his prior employer, they began
falling behind on their payments to JP Morgan Chase Bank on the
Gearhart beach house, and they listed the property for sale in
approximately February of 2009.  Oregon, like much of the
country, was in a recession, and real properties, including
expensive second homes, were not selling during taxable years
2009, 2010, and 2011.  According to petitioners, they rented the
Gearhart beach house to family and friends during taxable years
2009 and 2010, and they reported the following rental income and
deductions in connection with the Gearhart beach house on
Schedules E for taxable years 2009, 2010, and 2011:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| Rent received | $  9,500.00 | $ 3,200.00 | $  0.00 |
| Less: Mortgage interest paid | $ 92,037.00 | $ 7,622.00 | $  0.00 |
| Less: Taxes | $  5,590.00 | $11,164.00 | -$1,574.00 |
| Less: Depreciation | $ 47,832.00 | $49,904.00 | None |
|  |  |  |  |
| Total Expenses | $149,459.00 | $68,690.00 | -$1,574.00 |
| Income (Loss) | ($135,959.00) | ($65,490.00) | $1,574.00 |

No advertising, commissions, insurance, utilities, repairs,
and/or supplies expenses were claimed as rental expenses for
2009, 2010, or 2011.  According to information provided by
petitioners' representative to the Revenue Agent in 2014,
petitioner Shannon Duffy maintained that the renters stayed at
the Gearhart beach house for twenty-two nights in 2009 and for
ten nights in 2010 as follows:

| Name | Number of Nights | Month | Cost | Cost per Night |
|---|---|---|---|---|
| Murphy | 7 | July 2009 | $4,000.00 | $571.43 |
| Kehoe | 5 | July 2009 | $2,750.00 | $550.00 |
| Marandas | 4 | August 2009 | $1,100.00 | $275.00 |
| Martin | 6 | Oct. 2009 | $1,650.00 | $275.00 |
| Martin | 7 | July 2010 | $2,000.00 | $285.71 |
| Kehoe | 3 | August 2010 | $1,200.00 | $400.00 |

The Martins are parents of petitioner Shannon Duffy, and Murphy
is believed to be petitioner Edward Duffy's mother's cousin or
uncle.  On their 2011 Schedule E, petitioners claimed and offset

the suspended losses totaling $201,449.00 against their reported net rental income of $1,574.00 for taxable year 2011 for a Schedule E net rental loss of $199,875.00.

Revenue Agent Heather Buss reviewed petitioners' bank records, which showed that the petitioners charged items on their debit cards in Gearhart, Oregon, for thirty-five days in 2009 and twenty-nine days in 2010, and the Gearhart beach house's utilities records, which showed that there were fifteen months of usage during taxable years 2009 and 2010.

On March 23, 2011, petitioners sold the Gearhart beach house in a short sale. On their 2011 Federal income tax return, petitioners reported a $971,988.00 loss from the short sale of the Gearhart beach house on a Form 4797, Sale of Business Property, as follows:

| Description | Date acquired | Date Sold | Gross Sale Price | Deprec. allowed or allowable since acquisition | Cost basis | Gain or (loss) |
|---|---|---|---|---|---|---|
| EDPA House | 1/01/09 | 3/23/11 | 800,000 | 97,736 | 1,869,724 | -971,988 |

Petitioners' reported losses of $971,988.00 from the sale of a claimed business asset, the Gearhart beach house, generated a net operating loss that petitioners carried back to their 2009 and 2010 taxable years on a Form 1045, Application for Tentative Refund, as follows: (1) $274,002.00 of the net operating loss was carried back to taxable year 2009, which eliminated the originally reported 2009 tax liability of $35,979.00; and (2) $144,268.00 was carried back to taxable year 2010, which eliminated the originally reported 2010 income tax liability of $41,669.00. The Form 1045 was processed by the IRS, and refunds were issued. Petitioners also filed amended Oregon tax returns in 2012 taking the 2011 net operating loss generated by their reported sale of the Gearhart beach house and obtained a tax refund from the State of Oregon in the amount of $28,643.00 in 2012.

The short sale of the Gearhart beach property on March 23, 2011 also gave rise to the following cancellation of indebtedness income: (1) forgiveness of principal in the amount of $626,046.00; and (2) forgiveness of accrued, unpaid interest of $108,661.00. Petitioners reported the $626,046.00 of cancellation of indebtedness on their loan principal on their

2011 tax return as "other income," and no Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment), was attached to petitioners' 2011 Federal income tax return. However, petitioners did not report the cancellation of indebtedness on their unpaid interest on their loan of $108,661.00. Petitioner Shannon Duffy admitted in her Response, dated October 29, 2018 to Respondent's Request for Admissions, which was served on September 21, 2018, that JP Morgan Chase Bank N.A. consented to the short sale of the Gearhart beach house and forgave an outstanding principal owed by the petitioners in the amount of $626,046.00 in addition to the outstanding accrued interest owed by the petitioners in the amount of $108,661.00.[6]

On October 28, 2013, Wells Fargo Bank forgave petitioners' outstanding balance owing on a line of credit on their SW Highland Road property, their main residence, in the amount of $391,532.00. Petitioners reported the $391,532.00 in cancellation of indebtedness income on a Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment). However, on the Form 982, petitioners attempted to apply the $391,532.00 in cancellation of indebtedness income as a reduction to any net operating loss occurring in 2013 or that was carried over to taxable year 2013. However, on Statement 1 attached to their 2013 tax return, petitioners also claimed a principal residence exclusion of $391,532.00. In Respondent's Request for Admissions filed on September 21, 2018, petitioners were asked to admit the following requests:

> 5. *During taxable year 2013, petitioners owed a liability to Wells Fargo N.A. under a home equity line of credit secured by the SW Highland residence.*
>
> 6. *Petitioners did not use any funds drawn from the Wells Fargo N.A. home equity line of credit secured by the SW Highland residence to make improvements to the SW Highland residence.*

In petitioner Shannon Duffy's Response dated October 29, 2018, petitioner Shannon Duffy admitted to Request #5, and stated the following with respect to Request #6:

---

[6] Petitioner Shannon Duffy's Response to Respondent's Request for Admissions was not filed with the Court.

> *6. Petitioner, Shannon L. Duffy admits that the home*
> *equity line of credit from Wells Fargo was used*
> *principally on personal expenses. Little if any went*
> *to improvements on the Highland Road residence. None*
> *of these proceeds were used by Impact Medical, LLC.*

*IRS Audit and Notice of Deficiency*

Petitioners' Federal income tax returns for taxable years 2011, 2012, 2013, and 2014 were examined by the IRS. The IRS disallowed petitioners' claimed treatment of the short sale of the Gearhart property as sale of business asset because petitioners did not establish that the property was in fact an investment rental property. Thus, the reported loss of $971,988.00 for taxable year was disallowed, including the reported net operating loss. Because the 2011 net operating loss was disallowed, the IRS also disallowed the $199,875.00 in suspended Schedule E rental losses claimed in 2011 and the net operating loss carrybacks to taxable years 2009 and 2010 in the amounts of $274,002.00 and $144,268.00. The disallowed 2011 net operating loss also resulted in additional computational adjustments, including statutory adjustment to rental losses in the amounts of $25,000.00 and $13,972.00 for taxable years 2009 and 2010, respectively, and the tax treatment of $28,643.00 in state income tax refund received by petitioners in 2012.

With respect to Impact Medical LLC, the IRS did not make any adjustments to the Forms 1065, partnership tax returns, filed by Impact Medical LLC for taxable years 2012, 2013, and 2014. Rather, with respect to petitioner Edward Duffy, the IRS audited his reported unreimbursed partnership expenses and passive losses from Impact Medical LLC, and the IRS examined whether petitioner Edward Duffy owes taxes (income taxes and self-employment taxes) upon the guaranteed payments paid to him by Impact Medical LLC during 2012, 2013, and 2014.

On January 19, 2016, the IRS issued a notice of deficiency, which asserted the accuracy-related penalties under I.R.C. § 6662 against all years, and set forth the following adjustments:[7]

---

[7] The assertion of accuracy-related penalties under I.R.C. § 6662 that was to be applied to "all open years" was approved in writing by Exam Group Manager Patricia Crespi on December 16,

| Adjustment | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|
| Rental Loss – statutory adjustment to net operating loss[8] | $ 25,000 | $ 13,972 | | | | |
| Other income – restricted interest adjustment[9] | $274,002 | $144,268 | | | | |
| Other income – debt forgiven | | | $108,661[10] | | $391,532[11] | |

2015.  The grounds noted in the signed Civil Penalty Approval Form were substantial understatement of income taxes and negligence.

[8] The notice of deficiency disallowed the Form 4797 loss of $971,988.00 and reported passive rental loss carryover from 2009 and 2010 claimed in 2011 totaling $199,875.00.  These adjustments in turn caused the disallowance of the net operating loss carrybacks from 2011 to 2009 and 2010 and increased the taxpayers' adjusted gross income for these years to phase out their claimed rental losses for 2009 and 2010 in the amounts of $25,000.00 and $13,972.00, respectively.

[9] This adjustment is actually the disallowance of the net operating loss carryback from 2011 claimed on the taxpayers' 2011 Form 1045, Application for Tentative Refund, for 2009 and 2010 in the amounts of $274,022.00 and $144,268.00, respectively.

[10] On the 2011 Form 1040, the taxpayers reported cancellation of indebtedness income of $626,046.00, which is attributable to the short sale of their Gearhart beach house.  However, the $626,046.00 amount did not include accrued and unpaid mortgage interest that was also forgiven.  This adjustment is attributable to accrued, but unpaid mortgage interest owed on the beach house that was forgiven from the short sale.

[11] This second cancellation of indebtedness income arises from Wells Fargo's forgiveness of the home equity line of credit loan (Forms 1099-C).  The taxpayers reported the cancellation of indebtedness income of $391,532.00 but claimed a principal residence exclusion of $391,532.00.

| Adjustment | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|
| Sch E1 – real estate loss after passive limitations | | | $199,875[12] | | | |
| Sch C2 – car and truck expenses | | | $ 1,680[13] | | | |
| Sch C2 – travel | | | $    543[14] | | | |
| Other gains or losses from Form 4797 | | | $971,988[15] | | | |
| Sch E – Inc./Loss – Partnership[16] | | | | $261,741 | $338,565 | $139,335 |

---

[12] The IRS determined that the Gearhart beach house was not a rental property for 2009, 2010, and 2011, and the taxpayers' suspended passive rental loss carryover from 2009 and 2010 claimed in 2011 totaling $199,875.00 was disallowed because it was a personal residence.

[13] Edward Duffy's Schedule C for 2011 claimed car and truck expenses of $4,380.00 using the standard mileage rate. A mileage log was provided that showed less business miles than were reported on the Schedule C.

[14] Tax return reported travel expenses, including 100% of meals, related to Edward Duffy's Impact Medical Schedule C business totaling $6,365.00, and IRS allowed $5,822.00 for 2011. The Schedule C also claimed $2,901.00 in deductible meals and entertainment, which was not adjusted by the IRS.

[15] The IRS disallowed the petitioners' reported treatment of the loss from the short sale of the Gearhart beach house as a sale of business asset. The IRS determined that the beach house was a personal residence, and any loss from the short sale is disallowed under I.R.C. § 280A as a personal asset.

[16] These Schedule E adjustments are with respect to Impact Medical LLC:

| Year | Per Return – Sch E | Per Exam | Adjustment |
|---|---|---|---|
| 2012 | ($ 85,777.00) | $175,964.00 | $261,741.00 |
| 2013 | ($120,383.00) | $218,182.00 | $338,565.00 |
| 2014 | ($114,253.00) | $ 25,082.00 | $139,335.00 |

| Adjustment | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|
| State refund | | | | $28,643.00[17] | | |
| Sch A property tax | | | $1,574[18] | | | |

The remaining adjustments in the notice of deficiency are
computational adjustments due to the increased adjusted gross
income from the adjustments noted above.

---

The IRS's positions on these adjustments are as follows:

(1)   Primary position:  the debtor did not have any basis in
      Impact Medical LLC for these taxable years, so the
      reported flow-through partnership losses are disallowed.
      The debtor did not acquire basis in the LLC from two
      loans.  Additionally, the guaranteed payments paid to the
      debtor by Impact Medical LLC are taxable Schedule E
      income subject to self-employment tax.  Lastly,
      petitioners did not substantiate claimed unreimbursed
      partnership expenses.

(2)   Secondary position:  If petitioners were in fact
      insolvent in 2001 and/or 2013 just prior to the
      forgiveness of the debts, then any cancellation of
      indebtedness income treated as nontaxable due to the
      insolvency would result in tax attribute adjustments to
      petitioner Edward Duffy's outside basis in Impact Medical
      LLC.

[17] A 2012 Form 1099-G was issued by the Oregon Department of
Revenue in the amount of $28,643.00.  Petitioners originally
filed a 2011 Form 1040 with a negative taxable income and
claimed a net operating loss.  Their 2009 and 2010 Forms 1040,
as originally filed, had positive taxable income.  They filed a
Form 1045 taking the 2011 net operating loss back to 2009 and
2010, using the full benefit of the Schedule A deductions
reported on the 2011 Form 1040.  The taxpayers received a refund
from the Oregon Department of Revenue in 2012, which must be
treated as taxable.

[18] This adjustment is attributable to property taxes paid with
respect to the Gearhart beach house.  The property was sold in
2011 as a short sale.  The overpayment in property tax on the
property when it was sold is deemed to be a reduction in the
Schedule A amount for 2011.

On April 14, 2016, petitioners filed their petition.  In the petition, they alleged petitioner Edward Duffy had sufficient outside basis in Impact Medical LLC to deduct the reported partnership losses and the cancellation of indebtedness in 2013 was excludible from gross income by reason of petitioners' insolvency.

## BRIEF SYNOPSIS OF LEGAL AUTHORITIES:

*Burden of Proof*

Petitioners bear the burden of proving that respondent's determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).  Petitioners are required to substantiate amounts claimed as deductions, credits, etc., by maintaining the records needed to establish such entitlement.  I.R.C. § 6001. In addition, deductions and deductible losses are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions.  Tax Court Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

For audits beginning after July 22, 1998, I.R.C. § 7491(a)(1) requires that "if in any court proceeding a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue."  The limitations of paragraph (1) apply only if the taxpayers have complied with the requirements to substantiate such items, has maintained all records required, and has cooperated with reasonable requests for, among others, information, documents and meetings.  I.R.C. § 7491(a)(2)(A) and (B).  Petitioners have not asserted that the burden should be shifted to respondent under I.R.C. § 7491(a), and it is respondent's position that petitioners have not met the criteria to shift the burden to respondent in this case.

Additionally, before the accuracy-related penalty can be assessed, the initial determination of such assessment must be "personally approved (in writing) by the immediate supervisor of the individual making such determination."  I.R.C. § 6751(b)(1). Respondent is required to establish compliance with I.R.C. § 6751(b) as part of his I.R.C. § 7491(c) burden of production with respect to penalties.  Graev v. Commissioner, 149 T.C. No.

23 (December 20, 2017) (hereinafter Graev III). Respondent may
establish compliance with I.R.C. § 6751(b) by showing that the
immediate supervisor approved in writing the assertion of the
accuracy-related penalty prior to the issuance of the notice of
deficiency. See Id.

In this case, the manager approved the assertion of the
negligence penalty on December 16, 2015, which was before the
notice of deficiency in this case was issued on January 29,
2016. Thus, respondent meets his burden of production with
regards to the I.R.C. § 6662(a) penalty under Graev III.

*Taxable Income*

Under I.R.C. § 1, Federal income tax is imposed upon
taxable income. Section 61(a) defines gross income as income
from whatever source derived, including compensation for
services rendered and cancellation of indebtedness. In
addition, under I.R.C. § 1401, a tax is imposed upon self-
employment income. Self-employment income is defined as gross
income derived by an individual from any trade or business less
allowable deductions, but excludes gross income from the
performance of service by an individual as an employee. I.R.C.
§§ 1402(a) and 1402(c). Guaranteed payments from a partnership
are subject to self-employment taxes. Treas. Reg. §§ 1.707-1(c)
and 1.1402(a)-1(a)(2); Rev. Rul. 56-675, 1956-2 C.B. 459.

Generally, the cancellation or reduction of an indebtedness
results in taxable income to the debtor taxpayer. I.R.C.
§ 61(a)(12). However, if the taxpayer was insolvent or the
discharge is pursuant to a Title 11 bankruptcy case, then the
cancellation of indebtedness income may be excluded from gross
income. I.R.C. § 108(a)(1)(B). For purposes of I.R.C. § 108,
"insolvency" is defined as the excess of liabilities over fair
market value of assets. I.R.C. § 108(d)(3). The amount by
which the taxpayer is insolvent is based on the taxpayer's
assets and liabilities immediately before the discharge. I.R.C.
§ 108(d)(3). The taxpayer's business should be valued on a
going concern basis and intangibles and goodwill should be
included. Conestoga Transp. Co. v. Commissioner, 17 T.C. 506
(1951); J.A. Maurer, Inc. v. Commissioner, 30 T.C. 1273 (1958),
acq., 1959-2 C.B. 3. It is not clear whether the taxpayer can
take into account contingent liabilities or contested
liabilities; however, if a contingent liability is too far
removed to be reflected in basis, such contingent liability

should not be taken into account. <u>Gibson Products Co. v. U.S.</u>, 637 F.2d 1041 (5th Cir. 1981). If cancellation of indebtedness income is excluded under the bankruptcy, insolvency or qualified farm indebtedness rules, then there must be a reduction of certain favorable tax attributes to the extent of the income that is excluded. I.R.C. § 108(b).

The exclusion under the insolvency exception of I.R.C. § 108(a)(1)(B) does not avoid tax altogether. Rather, as noted above, the taxpayer is only deferring the taxable event because the taxpayer, in return for excluding income, must reduce certain tax attributes, if they exist, or in some cases, reduce the basis of property. I.R.C. § 108(b)(1), (b)(2)(E), and (c). Section 108 sets forth specific ordering rules for reduction of the tax attributes and the adjustment of bases. First, net operating losses for the taxable year of the discharge and net operating losses carried over to the taxable year of the discharge first must be reduced by the amount of income excluded. I.R.C. § 108(b)(2)(A); Treas. Reg. § 1.108-7(a)(1)(i). If the excluded income exceeds the taxpayer's net operating losses, the following tax attributes are reduced to the extent of excluded income, in the following order:

    (1)  General business credit carryovers;
    (2)  Minimum tax credits as of the beginning of the taxable year following the taxable year of the discharge;
    (3)  Net capital loss for the taxable year of the discharge or net capital loss carried over to the taxable year of the discharge;
    (4)  Basis of property of the taxpayer;
    (5)  Passive activity loss or credit carryover from the year of discharge; and
    (6)  Foreign tax credit carryover to and from the taxable year of the discharge.

I.R.C. § 108(b)(2)(B) to (G); Treas. Reg. § 1.108-7(a)(1). Net operating losses, capital loss carryover, and basis of property are reduced dollar by dollar. I.R.C. § 108(b)(3)(A). The tax attributes are reduced after the tax for the taxable year of the discharge is determined. I.R.C. § 108(b)(4)(A).

In the case of reducing basis in property, the property can be either depreciable or nondepreciable property held on the first day of the taxable year following the taxable year that

the taxpayer excluded discharge of indebtedness income.  I.R.C.
§ 108(b)(2)(E); Treas. Reg. § 1.1017-1.  The basis must be
reduced to the extent of the income.  Treas. Reg. § 1017-1(a).
A taxpayer must reduce in the following order:

> (1)   Real property used in a trade or business or held
>       for investment that secured the discharged
>       indebtedness immediately before the discharge,
>       other than real property described in Section
>       1221(1) (stock in the trade of the taxpayer or
>       inventory);
> (2)   Personal property used in a trade or business or
>       held for investment, other than inventory,
>       accounts receivable, and notes receivable, that
>       secured the discharged indebtedness immediately
>       before the discharge;
> (3)   Remaining property used in a trade or business or
>       held for investment, other than inventory,
>       accounts receivable, notes receivable, and real
>       property described in Section 1221(1);
> (4)   Inventory, accounts receivable, notes receivable,
>       and real property described in I.R.C. § 1221(1);
>       and
> (5)   Property not used in a trade or business or held
>       for investment.

Treas. Reg. § 1.1017-1(a)(1) to (5).

     However, taxpayers may affirmatively elect to reduce the
basis of depreciable property in lieu of reducing tax attributes
by entering appropriate information on a Form 982.  I.R.C.
§ 108(b)(5).  Once the election is made, the election can be
revoked only with the IRS's consent.  I.R.C. § 1017(b)(2).
Petitioners never made a Form 982 election for taxable year
2011, and their Form 982 for taxable year 2013 elected to reduce
any current year net operating loss or carryover net operating
loss to the current year as an alternative or an addition to
their exclusion of the cancellation of the indebtedness income
from Wells Fargo as cancellation of indebtedness excludible
under the principal residence exclusion.

*Disallowed Deductions and Losses*

Deductions and losses are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions and losses. Rule 142(a); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). If the allowance of a deduction or loss claimed on a return is challenged by respondent, respondent is not obliged to concede the taxpayers' entitlement to the deduction or loss unless adequate substantiation for the deduction has been provided by the taxpayers. <u>Hennessey v. Commissioner</u>, T.C. Memo. 2007-131 (citing <u>Huynh v. Commissioner</u>, T.C. Memo. 2002-110; <u>Gaeler v. Commissioner</u>, T.C. Memo. 2001-180). A taxpayer's self-serving declaration is generally not a sufficient substitute for records. <u>Hennessey</u>, T.C. Memo. 2007-131 at *43 (citing <u>Weiss v. Commissioner</u>, T.C. Memo. 1999-17). Where taxpayers are relying upon only their testimony to substantiate the deductions or losses, which are vague, conclusory, and/or questionable in certain material respects, the Court is not required to, and generally does not, rely upon the taxpayers' testimony to sustain their burden of establishing an error in the respondent's determination. <u>Hoopengarner v. Commissioner</u>, T.C. Memo. 2003-343 at *12 (citing <u>Geiger v. Commissioner</u>, 440 F.3d 688, 689-690 (9<sup>th</sup> Cir. 1971); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986)).

A taxpayer generally may deduct from gross income the ordinary and necessary expenses of carrying on a trade or business that are paid in the tax year (petitioners are cash basis taxpayers). I.R.C. § 162. In order to claim any deduction, the taxpayers must be able to prove that the expenses were in fact paid. The following expenses, which are deemed particularly susceptible to abuse, must generally be substantiated by adequate records or sufficient evidence corroborating the taxpayers' own statement: (1) expenses with respect to travel away from home (including meals and lodging); (2) entertaining expenses; (3) business gifts; (4) and expenses in connection with the use of "listed properties," such as cars and computers). I.R.C. § 274. These expenses must be substantiated as to (1) amount, (2) time and place, and (3) business purpose. I.R.C. § 274(d)(4).

A contemporaneous log is not required, but a record of the elements of the expense or use of the listed property made at or near the time of the expenditure or use, supported by sufficient

documentary evidence, has a high degree of credibility.
Adequate accounting generally requires the submission of an
account book, expense diary or log, or similar record maintained
and recorded at or near the time of the occurrence of the
expense.  Documentary evidence for lodging expenses is required.
Treas. Reg. § 1.274-5(c)(2)(iii).  Under Cohan v. Commissioner,
39 F.2d 540, 543-544 (2nd Cir. 1930), the Court may estimate the
amount of a taxpayer's expenses when adequate records do not
exist.  However, there must be sufficient evidence in the record
to provide a basis upon which an estimate may be made and to
permit the Court to conclude that a deductible expense was
incurred in at least some amount.  Sanderlin, T.C. Memo. 2008-
209 at *5-6.  Lastly, the Cohan rule may not, however, be used
to estimate expenses covered by I.R.C. § 274.  Treas. Reg. §
1.274-5(a)(1).  As noted above, the IRS did not disallow all of
petitioner Edward Duffy's Schedule C car and truck expenses and
travel expenses for taxable year 2011; the IRS disallowed the
portions of expenses that were not substantiated.

     Section 212 allows deductions of ordinary and necessary
expenses paid or incurred for the production of income or the
management, conservation or maintenance of property held of the
production of income.  However, I.R.C. § 280A disallows expenses
(and thus losses) in connection a dwelling unit that is used by
the taxpayer during the taxable year as a residence.  Under
I.R.C. § 280A(d), a taxpayer uses a dwelling during the taxable
year as a residence if he uses such unit (or portion thereof)
for personal purpose for a number of days which exceeds the
greater of (A) 14 days or (B) 10% of the number of days during
such year for which such unit is rented at fair rental.  I.R.C.
§ 280A(d)(1).

     Section 172 allows a taxpayer to deduct a net operating
loss for a taxable year.  The amount of the net operating loss
deduction equals the sum of the net operating loss carryovers
plus net operating loss carrybacks to that year.  I.R.C.
§ 172(a).  A taxpayer claiming a net operating loss deduction
for a taxable year must file with his return for that a year a
concise statement setting forth the amount of the net operating
loss deduction claimed and all material and pertinent facts,
including a detailed schedule showing the computation of the net
operating loss deduction.  Treas. Reg. § 1.172-1(c).

*Partnership*

While a partnership is not subject to tax on its taxable income, each partner generally must account for his distributive share of partnership taxable income in computing his income tax. I.R.C. § 702. The amount of partnership loss that may be recognized by a partner is limited to the amount of the adjusted basis (before reduction by the current year's loss) of his interest in the partnership at the end of the partnership tax year in which the loss occurred. I.R.C. § 704(d). Additionally, there are rules limiting a partner's deduction for any tax year to the amount he is at risk in the partnership for that year, which is applied at the partner's level. I.R.C. § 465; Temp. Treas. Reg. § 1.469-2T(d)(6).

A partner's basis in his partnership interest (his outside basis) is increased by his contributions to the partnership and his distributive share of partnership taxable income, while his basis is decreased by amounts distributed to him by the partnership and distributive shares of partnership losses. I.R.C. § 705(a). A partner's outside basis is also increased by the partner's share of partnership liabilities or an increase in the partner's individual liabilities because of the assumption of partnership liabilities. I.R.C. § 752(a). A liability is assumed only to the extent that the party assuming the liability is personally obligated to pay the liability. Treas. Reg. § 1.752-1(d)(1). Thus, a partner's outside basis is increased only when the partnership's liabilities are recourse (a liability for which a partner bears an economic risk of loss), and a partner's share of partnership recourse liabilities is the portion of such liability for which the partner bears the economic risk of loss. Treas. Reg. §§ 1.752-1(a)(1) and 1.752-2(a). Petitioner Edward Duffy has not established that he had sufficient basis in Impact Medical LLC during taxable years 2012, 2013, and 2014 to take the losses.

Any fixed payments to partners for services or for the use of capital made without regard to partnership income are treated as though paid to a nonpartner for purposes of computing partnership gross income and business expense educations. Thus, guaranteed payments are regarded as ordinary income to the recipient and are deductible by a partnership as ordinary and necessary business expenses. I.R.C. § 707(c); Treas. Reg. § 1.707-1(c).

Lastly, a partner generally may not directly deduct the expenses of the partnership on his or her individual returns, even if the expenses were incurred by the partner in furtherance of partnership business. Cropland Chem. Corp. v. Commissioner, 75 T.C. 288, 295 (1980), aff'd. without published opinion 665 F.2d 1050 (7th Cir. 1981); McLauchlan v. Commissioner, T.C. Memo. 2011-289. An exception applies, however, when there is an agreement among the partners, or a routine practice equal to an agreement, that requires a partner to use his or her own funds to pay a partnership expense. Klein v. Commissioner, 25 T.C. 1045, 1052 (1956); McLauchlan, T.C. Memo. 2011-289 at *7. Petitioners have not established that petitioner Edward Duffy is entitled to the disallowed unreimbursed partnership expenses.

*Penalties*

Section 7491(c) provides that the respondent shall have the burden of production with respect to the liability of any individual for any penalty or addition to tax. Once respondent has met his burden of production, the burden shifts to the taxpayers to show that they are not subject to the asserted addition to tax or penalties. Respondent is not required to produce evidence relating to defenses such as reasonable cause. Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6662 imposes a 20% accuracy-related penalty on the portion of an underpayment attributable to negligence or disregard of the rules or regulations, or to a substantial understatement of income tax. I.R.C. §§ 6662(a), (b)(1) and (2). "Negligence" is defined to include any failure to make a reasonable attempt to comply with the Internal Revenue Code; "disregard" is defined to include any careless, reckless, or intentional disregard. I.R.C. § 6662(c). A substantial understatement of income tax exists if the amount of understatement for the taxable year exceeds the greater of ten percent of the tax required to be shown on the return or $5,000.00. I.R.C. § 6662(d). However, the accuracy-related penalty does not apply if the taxpayer proves that he had reasonable cause and good faith for his underpayment. I.R.C. § 6664(c).

Under I.R.C. § 6001, petitioners were required to maintain records sufficient to establish the items reported on their tax returns. Treas. Reg. § 1.6001-1(a). They failed to maintain the required books and records and have not provided the

information and records necessary to substantiate the claimed
deductions and losses disallowed by the IRS.  Additionally, the
adjustments resulted in substantial understatement of income
taxes for the years at issue.  Therefore, petitioners are liable
the accuracy-related penalties under I.R.C. § 6662(a) for
taxable years 2009, 2010, 2011, 2012, 2013, and 2014.

**EVIDENTIARY PROBLEMS:**

Respondent would object to the admissions of any documents
that were not exchanged in accordance with the Standing Pretrial
Order and the Court's Order dated November 16, 2018, which
directed petitioners to comply with respondent's formal
discovery served on September 21, 2018, by November 26, 2018.

Date:  NOV 2 6 2018

NHI T. LUU
Senior Attorney (Portland,
Group 2)
(Small Business/Self-Employed)
Tax Court Bar No. LN0081
1220 SW 3rd Ave.
Suite G-004, M/S 0-700
Portland, OR 97204
Telephone: (503) 265-3608

Docket No. 8711-16

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing PRETRIAL MEMORANDUM FOR RESPONDENT was served on petitioners by mailing the same by Regular and UPS Next Day on _____NOV 26 2018_____ in a postage paid wrapper addressed as follows:

>      Edward J. Duffy and Shannon L. Duffy
>      1717 SW Highland Road
>      Portland, OR  97221

Date: ____NOV 26 2018____        _____
                                 NHI T. LUU
                                 Senior Attorney (Portland, Group 2)
                                 (Small Business/Self-Employed)
                                 Tax Court Bar No. LN0081